Randall P. CRALEY, Appellee,

v.

JET EQUIPMENT & TOOLS, INC. Walter Meier Holding Company, Blue Ball Machine Company, Inc., Appellants.

Superior Court of Pennsylvania.

Argued Feb. 27, 2001.

Filed June 6, 2001.

Louis E. Bricklin, Philadelphia, for appellants.

John F.X. Fenerty, Huntingdon Valley, for appellee.

Before DEL SOLE, P.J., EAKIN and LALLY–GREEN, JJ.

DEL SOLE, President Judge:

¶ 1 Appellants, Jet Equipment Tool; Inc., Walter Meier Holding Co ., and Blue Ball Machine Co., Inc., appeal from the judgment entered in favor of Appellee, Randall Craley, following the denial of their post-trial motions. Upon review, we affirm.

¶ 2 The trial court summarized the facts of this case as follows:

Plaintiff Randall Craley made his living as a woodworker. In 1994, Craley decided to install a permanent (as opposed to portable) dust collections [sic] system to serve all the machines in his wood shop. The goal was to collect dust and woodchips, by-products of the various woodworking machines in his 25′ × 75′ shop, before they could become a safety and fire hazard.

Craley purchased a DC–1200 vacuum machine and assembled it according to the instructions in the Owner's Manual supplied by defendants. He studied the limitations and specific potential hazards of the machine contained in the Manual and on the warning labels.

In the system designed by Craley, one of the twin flanged ports on the machine's removable adapter serviced a row of woodworking machines and floor sweeps. That part of the system used PVC pipe which was permanently attached along the wall above the wood working machines which were set up along the length of the shop. Between the machines were two floor sweep stations, permanently placed ports which did not service a particular machine. The floor sweeps were placed to vacuum debris not picked up by the ports dedicated to individual machines, when swept into those ports by Craley.

The debris in the front area of the shop was collected using a second flanged port on the adapter. Flexible tubing, similar to what is found on the venting of a home clothes dryer, was pressure fitted and slipped over the 5″ flange of the port. Using a length of hose sufficient to reach areas on the front to the shop where there were no floor sweeps, Craley was able to remove the remaining debris.

On the day of the injury, Craley finished using the flex hose to vacuum debris in the front of the shop. He removed the hose to put it away. Returning, he noticed a small amount of debris that had been missed. With the machine guard and adapter both in place, he fed the debris into the vacuum by tossing it toward the flanged port. A sliver of wood bridged the opening of the port. As Craley reached to remove the sliver, the suction of the machine took his hand and wrist into the whirling impeller blades.

There was no warning to make the user aware that the suction strength of the vacuum could take a man's hand and wrist into the blades.

Plaintiff's expert testified that the machine was defective because it lacked elements necessary to make it safe for its use as a vacuum source in a shop vacuum system. Specifically, the machine was defectively designed because it didn't have an adequate guard to keep the user away from the impeller.

Trial Court Opinion, 9/22/00, at 1–3.

¶ 3 Appellee filed suit against Appellants, pleading three causes of action: negligence, breach of implied warranties, and strict liability under Section 402A of the Restatement (Second) of Torts. Before trial, Appellee withdrew his claims of neg-

ligence and warranty theories of liability and proceeded to trial on the 402A strict liability theory only. On this claim, Appellee had two theories of liability: design defect and inadequacy of warnings. After a trial, the jury returned a verdict in favor of Appellee, finding damages in the amount of $1.6 million. Appellee also sought and received delay damages. Appellants filed post-trial motions which were denied. Judgment was entered on the verdict and this appeal followed.

¶ 4 On appeal, Appellants present numerous issues for our review:

1. Whether the lower court erred when it denied defendant's Motion for Judgment N.O.V.

2. Whether the court erred when it refused defendant's request that the jury be instructed that it could find a product defective only if it was not "safe for *intended* use."

3. Whether the court erred in refusing to admit Aaron Newswanger's testimony that plaintiff, in describing the accident told him "... it was a stupid move, I should have turned it off. I knew better. I squatted down and went to knock the blockage out, and when I'm out of balance it sucked my hand right in."

4. Whether the court erred in refusing to permit defendants to cross examine Plaintiff's expert with respect to the compliance with certain industry standards of the product alleged by plaintiff to be defective when plaintiff's expert had injected the issue into the trial through his testimony in direct examination.

5. Whether the court erred in refusing to permit defendant's counsel to cross examine plaintiff about the fact that he was not wearing safety goggles at the time of the accident in question, thereby depriving defendants of an opportunity to demonstrate to the jury that defendants' alleged failure to warn was not a proximate cause of the accident.

6. Whether the court erred in permitting plaintiff's expert to offer opinions not set forth in his report.

7. Whether the trial court erred in failing to apply the exception created in *Commonwealth v. Hammer*, 508 Pa. 88, 494 A.2d 1054 (1985), to the doctrine of waiver where defendant's counsel failed to object to plaintiff's counsel's inflammatory and prejudicial statements in his closing argument to the jury at the time the statement was made because the objection would have had a deleterious effect on the jury.

8. Whether the lower court erred in not determining that jury's verdict was excessive.

Appellants' Brief at 5–6.[1]

¶ 5 In products liability cases, § 402A of the Restatement (Second) of

---

1. Appellants' Statement of Questions Involved spans two full pages, contrary to Rule 2116(a), which says that such statement "should not ordinarily exceed 15 lines, [and] must never exceed one page." Pa.R.A.P. 2116(a). As we have before in such a case, we turn Appellants' attention to the following quote:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than

one or two reversible errors.... When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness. Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility—A View from the Jaundiced Eye of One Appel-

Torts has been adopted as the law of this Commonwealth. *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). The concept of strict liability allows a plaintiff to recover where a product in "a defective condition unreasonably dangerous to the consumer or user" causes harm to the plaintiff. RESTATEMENT (SECOND) OF TORTS § 402A. To prevail, the plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of the defendant, and (3) that the defect caused the harm. *Riley v. Warren Mfg.*, 455 Pa.Super. 384, 688 A.2d 221, 224 (1997). The threshold inquiry in all products liability cases is whether there is a defect. *Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408, 425 (1984). A design defect will be found where: "... the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use." *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020, 1027 (1978).

¶ 6 Appellants' first issue raised on appeal is that the trial court erred in refusing to grant their motion for judgment *non obstante veredicto* (judgment n.o.v.). Although Appellants raise this matter as one issue, they make three separate claims in support of this argument. We will address each sub-issue in turn.

¶ 7 Appellants initially assert the trial court erred in denying their motion because Appellee did not establish that the product was unreasonably dangerous or that Appellee was using the machine in an intended manner. Appellants' Brief at 18. Appellants contend that Appellee's use of the machine without the flexible hose, or

the duct work, was an unintended use of the machine. Appellants' Brief at 19.

¶ 8 The Owner's Manual contained assembly instructions indicating that one hose was included with the product. Appellee testified that the machine came equipped with one hose. The assembly instructions indicate that the only hose provided with the system was to be attached to the system running from the blower to the bag. The instructions directed that the hose was to remain attached. This hose had nothing to do with the flanged inlet adapter where Appellee's injury occurred. The product did not come equipped with a hose that was to be attached to this adapter, nor was there any evidence to indicate that a hose was to be attached to the inlet adapter. Accordingly, Appellee was using the product in the manner intended.

¶ 9 We agree with the trial court that Appellee carried his burden of proving: 1) the machine was unreasonably dangerous; 2) Appellee was using the machine for its intended purpose; and 3) the machine was not safe for its intended use.

¶ 10 Appellants next contend the trial court erred in denying their motion for judgment n.o.v. because the court should have concluded as a matter of law that Appellee assumed the risk of harm. We disagree.

¶ 11 Despite Appellants' assertions, the evidence does not support the conclusion that Appellee assumed the risk of harm. Appellee testified that he did not know the machine created a suction powerful enough to pull his hand into the propeller. He further testified that had he known the machine had this capability, he would not have placed his hand near the flanged

late Judge, 11 Cap.U.L.Rev. 445, 458 (1982).

*Estate of Lakatosh*, 441 Pa.Super. 133, 656 A.2d 1378, 1380, n. 1, (1995)(quoting *United States v. Hart*, 693 F.2d 286, 287, n. 1 (3d Cir.1982)). Because we can still adequately review Appellants' claims, we decline to dismiss their appeal.

portal. Thus, the trial court did not err in finding that Appellee did not assume the risk and it properly denied this claim as a basis for judgment n.o.v.

¶ 12 Appellants' third argument in support of their claim that the trial court erred in denying their motion for judgment n.o.v. is that Appellee was aware of the danger about which he contends he should have been warned and there is no basis for concluding that an additional warning would have avoided the accident. As noted previously, the evidence supports the conclusion that Appellee was not aware of the danger presented by the machine. We note that Aaron Newswanger, owner and CEO of Appellant Blue Ball, testified that it had never crossed his mind that the vacuum motor at issue had enough power to suck a man's hand into the impeller just by being near the port. Thus, it was not unreasonable to conclude that Appellee was unaware of the danger posed by the product. Furthermore, the testimony presented supported the conclusion that had a warning been presented regarding the potential hazard, the accident could have been avoided. Appellants' claim lacks merit. Accordingly, we conclude that the trial court did not err in denying Appellants' motion for judgment n.o.v.

¶ 13 Appellants' remaining issues pertain to their claim that the trial court erred in denying their motion for a new trial. Appellants present multiple arguments in support of this claim.

■ ¶ 14 Appellants first contend a new trial is warranted because the jury was improperly instructed that a product must be "safe for use" instead of "safe for intended use." Appellants' Brief at 25. Throughout the trial it was Appellants' position that Appellee was not using the machine in an intended manner, and therefore the product could not be deemed defective. Appellants contend they were prejudiced by the court's failure to charge the jury that the product must be shown to be "safe for intended use." Appellants' Brief at 26. In support of this assertion, Appellants cite *Marshall v. Philadelphia Tramrail Co.,* 426 Pa.Super. 156, 626 A.2d 620 (1993).

■ ¶ 15 In certain cases it is appropriate for the jury to be specifically instructed that the product must be made safe for its "intended use." *See Azzarello v. Black Bros. Co.,* 480 Pa. 547, 391 A.2d 1020 (1978). However, inclusion of the word "intended" is not always necessary for a proper instruction. *Marshall v. Philadelphia Tramrail Co.,* 426 Pa.Super. 156, 626 A.2d 620, 626 (1993). In *Marshall* this Court commented:

> While we do not think a jury has to be given the "intended use" instruction under every factual circumstance, surely the instruction should be used where the facts indicate the injured product user may have been the proximate cause of the accident through using the machine in an unanticipated way.

*Marshall,* 626 A.2d at 626.

¶ 16 We find the instant case is one in which the "intended use" instruction was not necessary. The trial court gave the instruction to the jury informing them that they were to find the product was not defective if it was "safe for use". We find that this instruction was appropriate. None of the evidence supports the conclusion that Appellee was using the machine in an unintended manner. Thus, the "intended use" instruction was not necessary.

■ ¶ 17 Appellants also contend the trial court erred in failing to apply the *"Hammer"* exception to the doctrine of waiver. Appellants attempted to raise in their post-trial motion the claim that Appellee's counsel made a prejudicial comment during his closing argument regard-

ing foreign nationals supplying products to American citizens. Appellants' counsel failed to object to the comment when it was made and attempted to raise it for the first time in post-trial motions. The trial court found counsel had waived the objection by not objecting when the comment was made. Appellants now assert the trial court erred in finding this issue waived and in failing to apply an exception to the waiver doctrine as set forth in *Commonwealth v. Hammer*, 508 Pa. 88, 494 A.2d 1054 (1985). Appellants contend that:

> ... an objection by defense counsel to plaintiff's counsel's inflammatory and prejudicial statement would only have aided in the jury hearing the statement a second time when the judge instructed them to disregard the statement. Thus, the objection would have been meaningless and detrimental because it would have emphasized the issue.

Appellants' Brief at 40.

 ¶ 18 Appellants misunderstand the purpose of the *Hammer* exception to the waiver doctrine. The *Hammer* exception applies in the context of matters involving judicial misconduct. As our Supreme Court has stated:

> ... *Hammer* provides a limited exception to the waiver doctrine. Where it appears from all the circumstances that a timely objection to perceived judicial misconduct would be meaningless, a party may choose to raise the issue for the first time at post-trial motions to preserve it for appellate review. This involves some risk, which a trial counsel should not assume lightly. The burden is on the party asserting the *Hammer* exception to the waiver doctrine to demonstrate that lodging a timely objection would have been meaningless. An objection would not be meaningless merely because the judge is likely to overrule it.

*Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1126 (2000). The case *sub judice* is not one involving judicial misconduct. Appellants' bald assertion that the objection would have been meaningless does not satisfy the burden necessary to invoke the *Hammer* exception. This claim is without merit.

¶ 19 With regard to the remaining issues raised by Appellants on appeal, we affirm those issues on the basis of reasoning set forth in the trial court opinion.

¶ 20 Judgment affirmed.

¶ 21 LALLY–GREEN, J. concurs in the result.