MASSIAH-JACKSON, J.,
I. FACTUAL BACKGROUND and PROCEDURAL HISTORY
In May, 2007, Mrs. Rosalind Wilson, went to *71 Roxborough Memorial Hospital in Philadelphia suffering from headache, chest pains, and shortness of breath. Following a chest x-ray, the radiologist identified a suspicious nodule and wrote on a Hospital STAT sheet and in her report a recommendation for CT scan with followup examinations. During Mrs. Wilson’s overnight stay, the doctors ruled out cardiac problems and pulmonary embolism at the hospital, however, her treating physicians did not advise her of the 2.3 centimeter nodule in her left lung. Twenty months later, in January, 2009, Rosalind Wilson learned that she had Stage IV lung cancer. The malignant nodule had grown to 8 centimeters and metastasized. Mrs. Wilson died on July 21, 2009, at age 70 years.
Her daughter, Rosalind W. Sutch, initiated this medical malpractice litigation in July, 2009 against the Hospital, the radiologist, the emergency room physician, and several staff physicians who participated in treatment during Mrs. Wilson’s May 3-4, 2007 stay.
In June, 2012, following a jury trial plaintiff-Estate was awarded $190,000.00. The trial judge granted post-trial motions and in October, 2012, a new trial was ordered. The Honorable Superior Court affirmed that determination by memorandum filed on November 4, 2013. The litigation was remanded for a new trial on the issues of both liability and damages, and against all parties. 3246 EDA 2012.
For nearly three weeks in the Fall, 2014, this court presided over the re-trial of this medical malpractice action. The jury heard from 22 witnesses, including experts in the fields of emergency medicine, hospital administration, internal medicine, geriatrics, family medicine, oncology, pulmonology, radiology, critical care, economics, nursing and more. On November 4, 2014, the jury returned a *72 verdict in favor of the Estate of Rosalind Wilson as follows: survival action, $965,550.00 and wrongful death action, $1,010,163.00. The total award for compensatory damages was $1,975,713.00. Liability was attributed to defendant-Emergency Room Physician-Jeffrey Geller, M.D. and Roxborough Emergency Physician Associates (“Geller”) at 33.3%, defendant-Staff Physician-Melanio Aguirre, M.D. at 33.3% and defendant-Hospital at 33.4%. The Radiologist, Barbara Goldman Robins, M.D. was found not liable.
Post-trial motions were filed by all parties. The court and counsel coordinated a briefing schedule applicable only to plaintiff-Estate, Geller and Dr. Robins. Oral argument was heard on May 7, 2015. After careful consideration of the issues raised by the parties, all motions for post-trial relief are denied in their entirety.
II. LEGAL DISCUSSION
A. Judgment Notwithstanding the Verdict is Not Appropriate in This Case.
Judgment notwithstanding the verdict (“JNOV”) may be entered only in a clear case. If any basis exists upon which the jury could have properly made its award, the verdict will not be overturned. Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1074 (Pa. 2006); Somerset Community Hospital v. Allan B. Mitchell & Assoc., Inc., 685 A.2d 141, 146 (Pa. Superior Ct. 1996).
There are only two bases upon which a court may enter JNOV. The first is when the movant is entitled to judgment as a matter of law. The second is when the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. Quinby v. Plumsteadville Family Practice, *73 Inc., supra and cases cited at 907 A.2d 1074; Moure v. Raeuchle, 604 A.2d 1003, 1007 (Pa. 1992). JNOV is an extreme remedy. Considering only the evidence which supports the verdict, the court must give the verdict winner the benefit of all doubt and of every fact and inference deducible from the evidence. Griffin v. University of Pittsburgh Medical Center-Braddock Hospital, 950 A.2d 996, 999 (Pa. Superior Ct. 2008); Robertson v. Atlantic Richfield Petroleum Products Co., 537 A.2d 814, 819 (Pa. Superior Ct. 1987). JNOV is not appropriate in this case.
The basis for the defendant’s JNOV motion is set forth in Geller’s post-trial brief at page 5:
“Plaintiff failed to present sufficient, competent evidence to establish a prima facie cause of action for negligence against Geller because factual predicates for her experts’ opinion testimony were lacking. Specifically, the evidence presented at trial on behalf of plaintiff was insufficient to prove any breach of duty on Geller’s part.” (emphasis in original)
In Sutherland v. Monogahela Valley Hospital, 856 A.2d 55 (Pa. Superior Ct. 2004), the Superior Court considered the proof required to present a cause of action in medical negligence, citing Mitzelfelt v. Kamrin, 584 A.2d 888 (Pa. 1990); Montgomery v. South Philadelphia Medical Group, Inc., 656 A.2d 1385 (Pa. Superior Ct. 1995). The Sutherland Court held at 856 A.2d 60:
“A cause of action sounding in negligence for medical malpractice requires proof of four elements: (1) the medical practitioner owed a duty to the patient; (2) the practitioner breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and, *74 (4) the damages suffered by the patient were the direct result of the harm.”
See also, Sokolsky v. Eidelman, 93 A.3d 858, 863 (Pa. Superior Ct. 2014).
The plaintiff presented Stephanie Porges, M.D., the Director of the Emergency Department at the Hospital of the University of Pennsylvania, as the expert witness in emergency medicine. October 27, 2014, N.T. 41-69. Dr. Porges testified with a reasonable degree of professional certainty that Dr. Geller’s deviation from the standard of care was the cause of Mrs. Wilson not being told she had a nodule on her lung.
Plaintiff’s expert opined that if Dr. Geller did not receive the test results before Mrs. Wilson’s care was transferred to Dr. Aguirre, then as the ordering doctor he should have documented and communicated in the chart “results still pending”, October 27,2014, N.T. 93,116, to alert the next provider to review the test results.
Plaintiff’s expert opined that if Dr. Geller did receive the test report, as indicated by the notation “cc: Dr. Geller,” and if he read the report, then the standard of care required that he order a CT scan for follow-up on the nodule. October 27, 2014, N.T 114-116.
The plaintiff’s expert testified that defendant-Geller properly ordered the V/Q scan which includes the two-viewx-ray. October 27, 2014,N.T. 100-101,103,106-107. The expert noted, however, that “As the physician who is responsible for the patient, you ordered the tests, you’re asking the question, you get the results.” October 27, 2014, N.T. 117. Whether the patient care was transferred to Dr. Aguirre at 2:30 p.m. or at 4:30 p.m. on May 3,2007, there is no documentation to indicate what information *75 Dr. Geller provided to Dr. Aguirre about the test or the test results. October 27, 2014, N.T. 117-118.
The emergency physician is responsible to ensure that “somebody else is going to find out that result.” October 27, 2014, N.T. 123, 151. He had the responsibility to ensure information is passed on to the new provider and that all things are followed up. Dr. Porges concluded that Dr. Geller failed to make sure that either he or the next provider checked the V/Q scan test results. October 27, 2014, N.T. 116-118. This expert evidence was sufficient to establish the prima facie negligence.
Defendant-Geller contends that the factual basis of the plaintiff’s expert opinion was flawed, therefore he is entitled to JNOV. This court does not agree. Based on the record and the reasonable inferences, Dr. Stephanie Porges concluded that Dr. Geller did receive a copy of the preliminary report. October 27, 2014, N.T. 91-92, and that the two-view x-ray revealed a “worrisome” 2.3 centimeter nodule. October 27, 2014, N.T. 114-116. The defendant argues that there was no evidence he received the documents, in his post-trial brief at page 6:
“Unfortunately for the plaintiff, the record evidence fails to establish any of those so-called “facts.” As explained more fully below, these “facts” constitute nothing more than mere assumptions, conjecture and speculation. Because Pennsylvania law requires that expert testimony be based upon facts proven on the record, Porges’ opinion testimony against Geller in this regard is clearly insufficient as a matter of law to “prove” the negligence claim asserted against him.” (emphasis in original)
In this litigation, defendant-Geller corroborated and *76 confirmed the testimony of defendant-Robins and all other witnesses. He stated that the hospital’s routine practice was that he was suppose to receive the STAT sheet from the radiologist because he was the ordering physician. And, as the ordering physician, the hospital’s routine practice was that he was suppose to receive the preliminary report of the tests he ordered. October 30, 2014 (P.M.), N.T. 3-107; October 31, 2014 (A.M.), N.T. 74-87. This evidence of the routine practice at Roxborough Hospital was properly admitted and relied on by the expert witness for the purpose of showing that specific behaviors on May 3,2007 conformed to that practice. Plaintiff-Estate did establish a prima facie case that the STAT report was delivered to Dr. Geller as the emergency room physician. Plaintiff-Estate did establish a prima facie case that the preliminary test results which noted “cc: Dr. Geller” was delivered to Dr. Geller.
Rule 406 of the Pennsylvania Rules of Evidence states:
“Evidence of a person’s habit or an organization’s routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or there was an eyewitness.”
See also, Beaver Valley Alloy Foundry Co. v. Therma-Fab, Inc., 814 A.2d 217 (Pa. Superior Ct. 2002) and cases cited at 223-224.
When considering a motion for JNOV, the evidence must be considered in the light most favorable to the verdict winner. Every reasonable inference of fact and any conflict in the evidence must be resolved in plaintiff-Estate’s favor. Here, the defendant-movant is not entitled *77 to judgment as a matter of law. Nor is this a case where no two reasonable minds could disagree that the outcome should have been rendered in favor of defendant-Geller.
B. Defendant-Geller’s Motion for a New Trial is Without Merit.
A trial court has broad discretion to grant or deny a new trial. In the circumstances presented here, the record supports the trial court’s evidentiary rulings and the jury’s determinations of liability, causation and damages. See generally, Criswell v. King, 834 A.2d 505, 512 (Pa. 2003), a new trial based on the weight of the evidence only in “truly extraordinary circumstances”; Armbruster v. Horowitz, DDS, 813 A.2d 698, 703 (Pa. 2002), credibility is solely for the jury and a new trial appropriate only when the verdict shocks one’s sense of justice; Martin v. Evans, 711 A.2d 458 (Pa. 1988), the juiy is free to believe all, part or none of the witnesses’ testimony, Morrison v. Commonwealth of Pennsylvania, 646 A.2d 565, 571 (Pa. 1994), the trial court must first determine whether mistakes were made during the trial; Gunn v. Grossman, M.D., 748 A.2d 1235, 1243 (Pa. Superior Ct. 2000), to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful to the complaining litigant; Johnson v. Hyundai Motors, 698 A.2d 631, 635 (Pa. Superior Ct. 1997), a new trial is warranted when there is a palpable abuse of discretion or an error of law which controls the outcome of the case.
1. The jury saw and heard at least nineteen medical witnesses, including expert witnesses and treating physicians. It was a classic “battle” of conflicting expert opinions. All of these trial witnesses possessed extensive knowledge, skill, experience, training and education in their fields of expertise. Defendant-Geller contends that *78 the verdict was against the weight of the evidence. In Renna v. Schadt, M.D., 64 A.3d 658 (Pa. Superior Ct. 2013), the appellate court reiterated the long-standing principle at 669:
“The general rule in this Commonwealth is that a weight-of-the-evidence claim is primarily addressed to the discretion of the judge who actually presided at trial. Armbruster v. Horowitz, 572 Pa. 1, 813 A.2d 698, 702 (2002). Since credibility determinations are within the jury’s realm, the authority of the trial judge to upset a verdict premised upon a weight claim is narrowly circumscribed. A trial judge cannot grant a new trial ‘because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion.’ Thompson v. Philadelphia, 507 Pa. 592, 493 A.2d 669, 672 (1985). Instead, a new trial should be granted only in truly extraordinary circumstances, i.e., ‘when the jury’s verdict is so contrary to the evidence as to shock one’s sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.’”
See also, Hatwood v. Hospital of the University of Pennsylvania, 55 A.3d 1229, 1238 (Pa. Superior Ct. 2012).
The plaintiff’s expert, Dr. Stephanie Porges was unequivocal in her presentation that defendant-Geller breached the standard of care when he either failed to personally obtain the result of the tests he ordered, or, when he neglected to document that such results were pending. October 27, 2014, N.T. 116-118. The defendant’s expert in emergency medicine Thomas Rebbecci, M.D. practices at Cooper University Hospital. October 28, 2014, N.T. 4-35. Dr. Rebbecci opined that Dr. Geller did meet the *79 standard of care in communication, acceptance of transfer, and documentation. October 28, 2014, N.T. 53-56, 62-64. Because there was conflicting expert evidence presented to the jury, the challenge to the weight of the evidence cannot succeed. The jury was free to believe all or part or none of the evidence.
Defendant-Geller’s motion for new trial is not sustainable. Dr. Geller testified that if the STAT sheet or the preliminary V/Q scan report had been delivered to him with “abnormal” results, he would have promptly made the physician responsible for the patient aware. October 30, 2014, N.T. 99-105; October 31, 2014, N.T. 74-87. He adamantly denied ever receiving either the STAT sheet or the test results. If the jury accepted his testimony that neither the STAT sheet nor the test report was delivered to him, the hospital records confirm that Dr. Geller did not document the charts to alert the next provider — and the defendant was negligent. If the jury determined that Dr. Geller was not credible and that he did receive one or both of the documents but failed to take follow-up care, then the defendant was negligent. The verdict does not shock one’s sense of justice and the record supports the outcome.
On pages 6-8 of Geller’s post-trial brief and at our hearing on May 7, 2015, the defendant suggests that the entry of an order for the V/Q scan was sufficient notice to subsequent medical providers. At page 6, the argument is inaccurately framed as a “concession” by the plaintiff’s expert:
“Importantly, however, on cross examination, Porges conceded that the order for the VQ scan was clearly indicated in Ms. Wilson’s chart and, further, that (where, as here, the results were not documented in the *80 chart) that order entry was — itself — an indication to subsequent healthcare providers (taking the time to review the chart) that the results of that study were pending.”
Defendant-Geller’s position is misguided. The legal issue in this malpractice litigation was not whether subsequent treaters had notice of a V/Q scan Order. Rather, Dr. Porges testified that Dr. Geller deviated from the standard of care by failing to document in writing that the test results were pending. October 27, 2014, N.T. 116-118. It was this failure by Dr. Geller which substantially contributed to Mrs. Wilson not receiving the requisite medical advice and increased the risk that she would have a bad outcome. October 27, 2014, N.T. 118-120.
The fact that other providers may or may not have had notice of an order for a V/Q scan does not relieve this defendant from liability for his deviation from the standard of care in the emergency room on May 3, 2007.
2. The defendant contends that the jury should have been permitted to know his “life experiences in dealing with his father’s lung cancer [which] absolutely impacts his practice and state of mind with respect to lung nodules — i.e., by, among other things, informing his medical decision-making as well as sensitizing him to the issue of lung nodules.” Geller motion, Paragraph 37; Geller post-trial brief, pages 25-33. The trial court determined that whether or not Dr. Geller was sensitive or sensitized to lung cancer would not advance the relevant inquiry for the jury, which included, did Dr. Geller receive the STAT sheet and/or did Dr. Geller receive the preliminary test report. If defendant did receive one or both documents and failed to act, then he was negligent.
*81 The proffered evidence was meant to buttress his defense that because he was sensitive and/or sensitized he would not have ignored the abnormal findings. Defendant-Geller argues that evidence of his state of mind and his thought processes were relevant to demonstrate that he complied with the standard of care. Geller post-trial brief, pages 26-30. This argument must fail because the law in Pennsylvania does not allow consideration of subjective state of mind of a doctor when he is a treating a patient. See, Buckman v. Verazin, M.D., 53 A.3d 956, 963-964 (Pa. Superior Ct, 2012).
Moreover, defendant’s reliance on Rule 406 of the Pennsylvania Rules of Evidence is misplaced. The proffered testimony pertains to a generalized state of mind rather than repeated conduct, thus, an analysis of whether the conduct is sufficiently regular is not possible. The comment to Rule 406 states in part:
“Evidence of habit must be distinguished from evidence of character. Character applies to a generalized propensity to act in a certain way without reference to specific conduct, and frequently contains a normative, or value-laden, component (e.g., a character for truthfulness). Habit connotes one’s conduct in a precise factual context, and frequently involves mundane matters (e.g., recording the purpose for checks drawn).”
There was no ability for the trial court or the jury to assess whether the defendant’s thought process based on his life experiences occurred with sufficient regularity to make it more probable that he would follow the standard of care in every instance or even in most instances. Accordingly, the fact that Dr. Geller’s father had lung cancer was not relevant and the evidence was properly precluded.
*82 3. Rule 227.1(b) of the Pennsylvania Rules of Civil Procedure states:
“(b) Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,
(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and
(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.”
Defendant-Geller complains that counsel for co-defendants did not fairly provide sufficient time for him to testify and present his expert witness. He also complains that co-counsel made improper comments during closing arguments. Geller post-trial brief, pages 34-38. Because none of these issues were brought to the attention of the trial court in November, 2014, all of these issues are waived.
The four defense trial attorneys represented the hospital and related corporate entities, named and unnamed staff physicians, and at least three named treating physicians. It was left up to these seasoned trial counsel and their clients to juggle the timing and strategies for the order and presentation of evidence and the content of closing arguments.
It is hornbook law that litigants are expected to make timely and specific objections during trial. Issues which *83 are raised for the first time in post-trial motions are deemed waived. See generally, Harman v. Borah, M.D., 756 A.2d 1116 (Pa. 2000) and numerous cases cited at 1124-1125; Craley v. Jet Equipment & Tools. Inc., 778 A.2d 701, 707 (Pa. Superior Ct. 2001). Defendant-Geller’s arguments have not been preserved for review.
C. Plaintiff-Estate’s Cross-Motion for New Trial is Without Merit
In this case, the plaintiff-Estate seeks another new trial, but is unable to articulate how it has been harmed or prejudiced by any of the trial court’s evidentiary rulings. Our Pennsylvania Appellate Courts consistently note that evidentiary rulings which do not affect the verdict will not provide a basis for disturbing the jury’s judgment. See generally, Schuenemann v. Dreemz, LLC, 34 A.2d 94, 99 (Pa. Superior Ct. 2011) quoting Schmidt v. Boardman, 958 A.2d 498, 516 (Pa. Superior Ct. 2008); Pittsburgh Construction Co. v. Griffith, 834 A.2d 572, 585 (Pa. Superior Ct. 2003) noting erroneous admission of evidence is not grounds for new trial where no harm or prejudice resulted.
In 2012, references to the decedent’s life long smoking habits were precluded and the verdict award was $190,000.00.
In 2014, references to decedent’s life long smoking habits were told to the jury and the verdict award was $1,975,713.00.
Plaintiff seeks another new trial where references to the decedent’s life long smoking habits will be precluded. No where in any written submission has plaintiff articulated a legal or factual basis for a finding of harm or prejudice to warrant another new trial. Without more, all of plaintiff- *84 Estate’s new trial motions are denied.
[[Image here]]
1. Dr. Gilbert D’Alonzo, a defense “damages” expert in pulmonary and critical care medicine submitted his report in January, 2014. When he testified on October 30, 2014, his opinions were well within the scope of his report as he explained to the jury the basis of his conclusions that Mrs. Wilson’s life expectancy was compromised due to her continued smoking, her atherosclerosis, progressive peripheral vascular disease, and chronic obstructive pulmonary disease (COPD). Dr. D’Alonzo concluded that Mrs. Wilson would not have survived 15 additional years, but rather “three years beyond that of her death,” that is, to 2012.
The plaintiff contends that Dr. D’Alonzo should not have been permitted to testify at trial because his expert report was submitted after case management deadlines. Here, as in Augustine v, Delgado, M.D., 481 A.2d 319 (Pa. Superior Ct. 1984), we must focus upon the period of time from counsel’s awareness of the expert to the time of Dr. D’Alonzo’s trial testimony, 481 A.2d at 324. While late disclosure of the identity of an expert is not ideal, the mere occurrence of such a circumstance is not per se grounds for new trial. See, Kemp v. Qualls, M.D., 473 A.2d 1369 (Pa. Superior Ct. 1984), holding that thirteen days to investigate and prepare for an expert witness is sufficient; Augustine v. Delgado, M.D., supra, concluding that 50 days provided ample opportunity to study and develop a strategy.
In the case at bar, counsel had 10 months to prepare, however, he chose not to. On October 16,2014, plaintiff’s counsel advised the court and all defense counsel that *85 neither he nor his seven expert witnesses had prepared for Dr. D’Alonzo’s testimony. Significantly, the seven experts had never even seen Dr. D’Alonzo’s expert report in the 10 months since it was issued in January, 2014. October 16, 2014, N.T. 67-68; October 30, 2014, N.T. 16.
When determining whether an expert’s trial testimony falls within the fair scope of his pre-trial report, the trial court must avoid unfair surprise and determine whether the report provides sufficient notice of the expert’s theories to make a meaningful response. Tiburzio-Kelly v. Montgomery, 681 A.2d 757 (Pa. Superior Ct. 1996).
The defense expert reviewed numerous records, expert reports, all medical records, imaging studies, chest x-rays and physician reports. October 30, 2014, N.T. 36. Dr. D’Alonzo’s pre-trial report summarized Mrs. Wilson’s medical history and concluded on page 5:
“I have been asked to express a medical opinion concerning Ms. Wilson’s life expectancy without the development of metastatic lung cancer. It is my opinion that her life expectancy was considerably shortened for a variety of reasons. She was actively smoking cigarettes her entire adult life and has clear-cut evidence of chronic obstructive pulmonary disease. Furthermore, and very importantly, she has a combination of hypertension, obesity, peripheral vascular disease and hyperlipidemia. This combination is tightly associated with metabolic syndrome, a group of risk factors that increase the risk for coronary artery disease and stroke. Her peripheral vascular disease would be considered substantial if not severe. Peripheral vascular disease can be considered a marker for coronary artery disease.... Per the medical records, it is much more likely than not that she also *86 had coronary artery disease.”
Dr. D’Alonzo’s trial testimony was consistent and revealed no surprises: He reviewed his fifty page curriculum vitae as a tenured Professor of Medicine at Temple University Medical School for 26 years, and was proffered as an expert in pulmonology, critical care, cancer with lung cancer specialty, and, staging of cancer. October 30, 2014, N.T. 19-34; testified about Mrs. Wilson’s co-morbidities prior to diagnosis of lung cancer, including hypertension, hyperlipidemia, thyroid disease, orthostatic hypotension, neurovascular disease, and COPD, N.T. 37; review of the 2007 imagining studies which showed emphysema and COPD, N.T. 43-54; effects of smoking, inflammation, staging of cancer, N.T. 65-72; explanation of his opinion on survival rate and life expectancy, N.T. 73. Plaintiff had the opportunity for vigorous cross-examination, including references to disputed expert opinions by different witnesses, N.T. 74-106.
The Superior Court held in Feden v. Consolidated Rail Corporation, 746 A.2d 1158 (Pa. Superior Ct. 2000), that so long as a party is not prevented from making a meaningful response, an expert’s trial testimony is fair. In this case, counsel for plaintiff-Estate was able to point out the absence of medical treatment for the co-morbidities, and reminded the witness and jury that two of plaintiff’s experts reached different determinations. N.T. 85-89. This court cannot conclude that Dr. D’Alonzo unfairly prejudiced the presentation of plaintiff’s case. See also, Jacobs v. Chatwani, M.D., 922 A.2d 950, 962 (Pa. Superior Ct. 2007), where Superior Court noted “strikingly,” the plaintiff failed to establish prejudice or surprise when her own experts rebutted the challenged opinions of a defense expert.
*87 2. The purpose of a jury charge is to provide guidance to jurors in their deliberations. It is important that the trial court inform the jury of the law applicable to the facts of the case. It is well-settled that instructions should be confined to the issues raised and developed by the trial. Here, where the requested instruction is not based on the evidence presented, it was declined. If an instruction was given which referred to matters not mentioned by witnesses during trial, it could mislead or confuse the jury.
This court removed all evidence relating to Mrs. Wilson’s smoking cessation counselling, her continued smoking after her diagnosis, and expert opinion that cancer nodules grow faster in smokers than non-smokers. The jury was not told that Mrs. Wilson did not go to any doctors for annual check-ups and that neither she nor her family complied with the Roxborough Hospital physicians’ discharge recommendations for follow-up cardiac evaluations and testing. October 30, 2014, N.T. 5-15, 39-43.
Plaintiff submitted a proposed jury instruction about cigarette smoking and causation issues which the trial court concluded did not reflect evidence submitted during the many weeks of trial. November 3, 2014, N.T. 96-98. This court explained to counsel that he could argue to the jury factors relating to smoking in his closing argument. November 3, 2014, N.T. 111-112. In McManamon v. Washko, 906 A.2d 1259 (Pa. Superior Ct. 2006), the appellate court held that jury instructions as a whole were proper and there was no need for specific instructions which did not reflect the facts of the case. In the case at bar, all counsel submitted a joint point for charge describing factual cause, Pa. SSJI (Civ.) §14.20 on November 3, 2014, N.T. 307-308, which was read to the juiy by the *88 court.
The McManamon Court quoted Raskin v. Ford Motor Co., 837 A.2d 518, 523 (Pa. Superior Ct. 2003) and Stewart v. Motts, 654 A.2d 535, 540 (Pa. 1995), as follows, at 906 A.2d 1271:
“A reviewing court will not grant a new trial on the grounds of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental.”
3. Personnel matters relating to parties or witnesses are relevant if, and only if, the evidence will advance the cause of action. Pennsylvania Rule of Evidence 401, provides the test for relevant evidence:
“Evidence is relevant if:
(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
(b) the fact is of consequence in determining the action.”
Evidence that is not relevant is not admissible. See, Rule of Evidence 402.
Cross-examination of Dr. Robins’ expert witness, Ethan Halpem, M.D. about Dr. Robins’ plans to retire neither tended to establish that Dr. Robins actually did have too many responsibilities, or, that her retirement plans had any bearing on Mrs. Wilson’s situation. Multiple layers of speculation would not support a logical or reasonable inference of the existence of consequential facts as per Rule 401. Irrelevant evidence should not be received by a court. Reichman v. Wallach, 452 A.2d 501, 508-509 (Pa. Superior Ct. 1982).
*89 It was for these same reasons that this court precluded defense counsel from questioning plaintiff’s expert in hospital administration, Mr. Robert Goodwin, about his involuntary moves from job to job. Those inquiries were not designed explore qualifications, but rather to embarrass the witness. But compare, Hawkey v. Peirsal, 869 A.2d 983, 990 (Pa. Superior Ct. 2005), holding that such inquiries are relevant to qualifications.
4. Finally, when defendant-Robins was asked to speculate about defendant-Geller’s expectations relating to a hospital record STAT sheet, the court requested that counsel rephrase the question. He chose not to do so. The information was presented later without referring to Dr. Geller’s state of mind. October 29, 2014, N.T. 124, 127-128,131-138. Moreover, counsel also had the opportunity to question Dr. Geller directly about his expectations relating to the STAT sheet on October 31, 2014.
D. Vestiges of The First Trial Do Not Entitle Parties to a Third Trial.
Plaintiff-Estate makes an argument for another new trial by relying on claims entitled “law-of-the-case,” at post-trial brief, dated February 27, 2015, page 13:
“The law-of-the-case doctrine required this court to honor Judge Panepinto’s smoking order because as a pre-trial ruling it was not nullified by the grant of a new trial....
The law-of-the-case doctrine required this court to honor the Superior Court’s finding that evidence of Mrs. Wilson’s smoking was unfairly and highly prejudicial and that defendants waived their right to challenge the smoking order.” (citations omitted)
*90 This trial court did read, understand and abide by the Superior Court’s ruling. In November, 2013, the appellate court held that Mrs. Wilson’s smoking history was not relevant either to the cause of the 2.3 cm nodule or to causation of her Stage IV cancer. The appellate court noted that evidence of her smoking history would distract the jury from impartially weighing evidence and might provoke the jury to improperly hold Mrs. Wilson responsible for contributing to her lung cancer. 3246 EDA 2012, at 15-16:
“It is undisputed that evidence of decedent’s smoking habit was irrelevant to the issue of causation, and this case was not bifurcated on the issue of liability and damages.”
At the retrial in 2014, this trial court recognized that the Superior Court did not decide the distinct issue of whether smoking was relevant to the issue of damages. Accordingly, here as in George v. Ellis, 911 A.2d 121, 126 (Pa. Superior Ct. 2006), a different legal issue was presented on remand. The law of the case doctrine did not preclude evidence of smoking as it related to damages.
For more than 70 years Pennsylvania has held that in civil proceedings when a retrial is granted, the rulings of the previous trial court on the admissibility of evidence are not binding on the new trial judge. In Commonwealth v. Hart, 387 A.2d 845 (Pa. 1978), our Pennsylvania Supreme Court provided a comprehensive overview of Pennsylvania’s civil practice when it adopted the same rule for criminal cases. 387 A.2d at 847:
“... upon the grant of a new trial, the prior judgment is set aside and the case, including all matters raised by the pleadings, is restored to the status it has been before *91 any trial took place as though no trial had been held.”
See also, Arthur v. Kuchar, 682 A.2d 1250, 1255-1256 (Pa. 1996) noting that the grant of a new civil trial restores the case to it is original status to be tried de novo as to all parties and all issues; Banohashim v. R.S. Enterprises, LLC, 77 A.3d 14, 27 n. 6 (Pa. Superior Ct. 2013), the grant of a new trial wipes the slate clean of the former trial, quoting Commonwealth v. Oakes, 392 A.2d 1324, 1326 (Pa. 1978).
Plaintiff-Estate was not surprised or prejudiced by evidence of smoking as it related to the damage claims of the defendants, i.e., Mrs. Wilson’s life expectancy. Plaintiff’s own experts submitted reports in 2011, which included comments about Mrs. Wilson’s smoking habits.
On October 21, 2014, the jury heard Dr. Richard Simons, plaintiff’s expert in internal medicine and geriatrics opine that Mrs. Wilson had a history of mild chronic conditions which were asymptomatic. N.T. 117. Dr. Simons concluded that after considering her smoking, control of her high blood pressure, and good family support, Mrs. Wilson had a full life expectancy of 15.46 additional years. N.T. 119-123.
On October 22,2014, Dr. Richard Hirshman, plaintiff’s expert witness in medical oncology and internal medicine told the jury that Mrs. Wilson smoked and had “minor co-morbidities” in May, 2007. He opined that her life expectancy was 15.4 years to age 83. N.T. 50-53.
It was up to the jury to balance and weigh the opinions of those experts with the testimony of the defense expert, Dr. Gilbert D’Alonzo. See, Havasy v. Resnick, 609 A.2d 1326, 1334 (Pa. Superior Ct. 1992), holding that when testimony of defense experts rebuts evidence from *92 plaintiff’s experts, the jury must determine credibility and weight of conflicting testimony.
After consideration of the circumstances present here, the law of the case doctrine is not applicable and this court did not alter the resolution of a legal question previously decided by the Superior Court.
[[Image here]]
Defendant-Geller contends that when he was denied his right to counsel of his choice he suffered prejudice when the jury found him liable for the harm to plaintiff. At the first trial in 2012 the jury found in favor of Dr. Geller. In the 2014 second trial, when he was represented by a different attorney, his liability was apportioned at 33.3 percent. Dr. Geller argues that he is entitled to a new trial with counsel of his choice.
The issue raised at this juncture is not whether the orders for disqualification were proper. Nor does this defendant contend that his second trial counsel was incompetent. Rather, defendant-Geller asserts that he was denied his constitutional right to be represented by counsel of his own choosing in this civil litigation. This court does not agree.
Our Pennsylvania Supreme Court has held that in criminal matters the criminal defendants’ right to counsel of their own choosing must be weighed and balanced with the Commonwealth’s interest in swift, efficient and effective administration of justice. Accordingly, in certain circumstances, “a reasonable curtailment of the sixth and fourteenth amendment is not constitutionally offensive.” Moore v. Jamison, 306 A.2d 283, 291 (Pa. 1973). See also, Pitillo v. Takiff, 341 A.2d 896, 905 (Pa. 1975).
*93 Dr. Geller relies on Nestor v. George, 46 A.2d 469 (Pa. 1946), where the Supreme Court acknowledged that a civil litigant’s right to counsel is integral to due process of law, at 473;
“[I]t is the constitutional right of every accused ‘to be heard by himself and his counsel,’ so likewise in civil cases, a litigant’s right to be fully represented by counsel is an integral part of that ‘due process of law’ which every resident of this state and nation whose legal rights are being adjudicated can freely invoke.”
See also, 42 Pa. C.S.A. §2501(a). The courts have stated, however, that the civil litigant’s right to counsel does not encompass an absolute right of representation by a specific counsel of one’s choosing, e.g., Papalia v. Montour Auto Service Co., 682 A.2d 343 (Pa. Superior Ct. 1996), where there was no allegation that substitute counsel was not competent or not prepared, litigant rejected the opportunity to be represented at the trial; Princess Hotels International v. Hamilton, 413 A.2d 1064 (Pa. Superior Ct. 1984), where there was no allegation of negligence or lack of preparation, litigant could not simply change attorneys one week prior to trial and seek continuance; Snyder v. Port Authority of Allegheny County, 393 A.2d 911 (Pa. Superior Ct. 1978), non-suit affirmed and right to counsel not infringed when litigant changed attorneys three days before trial.
There are also circumstances when an individual’s right to his own freely chosen counsel cannot be upheld in the context of disqualification orders. See, Slater v. Rimar, Inc., 338 A.2d 584, 589-590 (Pa. 1975); McCarthy v. SEPTA, 772 A.2d 987, 989-991 (Pa. Superior Ct. 2001). The Third Circuit Court of Appeals has commented that *94 civil litigants do not have an absolute right to retain particular counsel even when their attorney of choice has represented them for a number of years and is disqualified. IBM v. Levin, 579 F.2d 271, 283 (3rd Cir. 1978). See also, Richardson-Merrell. Inc. v. Koller, 472 U.S. 424, 438-440 (1985), where Justice O’Connor wrote the opinion for the court holding that there must be an assessment of the effect of the substitute counsel after a judgment before a court can decide if a civil litigant’s right to counsel has been prejudiced. Justice Brennan recognized only a “qualified right” in civil cases to retain an attorney of one’s choice (Brennan, J. Concurring Opinion, 472 U.S. at 441-442).
In the case at bar, when an assessment of substitute counsel is made, this trial court enthusiastically concludes that Dr. Geller’s trial counsel was well-prepared, competent, and articulate and a zealous and effective advocate for her client. The verdict in the second trial did result in a finding of liability, however, the apportionment was equally balanced with the other defendants. The record simply does not support the contention that Dr. Geller’s right to a particular attorney was compromised or prejudiced as a result of the substitution of trial counsel in 2014.
III. DELAY DAMAGES
At the post-trial hearing held on May 7, 2015, defendant-Geller argued that equitable principles support his position that delay damages should not be awarded to plaintiff-Estate for any period after July 1,2011. This court does not agree. Arthur v. Kuchar, 682 A.2d 1250, 1255-1257 (Pa. 1966). Accordingly, 33.3% of the compensatory damages award is $657,912.42, to which 33.3% of the delay damages amount of $120,731.43, will be added. A *95 judgment order in the amount of Seven Hundred Seventy Eight Thousand Six Hundred Forty Three Dollars and Eighty Five Cents ($778,643.85) will be entered in favor of plaintiff-Estate and against defendant-Geller. See correspondence dated May 11, 2015 and May 14, 2015, filed on docket. (Control No..14111623).
IV. CONCLUSION
The jury determined that defendant Barbara Goldman Robins, M.D. was not liable for any harm to plaintiff-Decedent, Rosalind Wilson. Judgment will be entered in favor of defendant-Robins.
For all of the reasons set forth above, the motions for post-trial relief filed by Jeffrey Geller, M.D. and Roxborough Emergency Physician Associates, LLC are denied.
For all of the reasons set forth above, the cross-motions for post-trial relief filed by Rosalind W. Sutch, as Executrix of the Estate of Rosalind Wilson are denied.
JUDGMENT ORDER/GELLER
And Now, this 15 th day of May, 2015, after consideration of all of the motions for post-trial relief filed by the parties, the responses thereto, after oral argument held on May 7, 2015, and for the reasons set forth in the memorandum filed this date, it is hereby
Ordered that judgment is entered in favor of the Estate of Rosalind Wilson in the amount of Seven Hundred Seventy Eight Thousand Six Hundred Forty Three Dollars and Eighty Five Cents ($778,643.85) and against defendants Jeffrey Geller, M.D. and Roxborough Emergency Physician Associates, LLC.
*96 JUDGMENT ORDER/ROBINS
And now, this 15th day of May, 2015, after consideration of all of the motions for post-trial relief filed by the parties, the responses thereto, after oral argument held on May 7, 2015, and for the reasons set forth in the memorandum filed this date, it is hereby
Ordered that Judgment is entered in favor of Barbara Goldman Robins, MD.
ORDER
And now, this 15 th day of May, 2015, after consideration of the cross-motion for post-trial relief filed by plaintiff Estate of Rosalind Wilson, defendants’ responses thereto, after review of all post-trial briefs submitted from all parties, after oral argument held on May 7, 2015, and for the reasons set forth in the memorandum filed this date, it is hereby ordered that the cross-motion filed by plaintiff-estate is denied in its entirety.
ORDER
And now, this 15th day of May, 2015, after consideration of the motion for post-trial relief filed by defendants Jeffrey Geller, M.D. and Roxborough Emergency Physician Associates, LLC, all responses thereto, after review of all post-trial briefs submitted from all parties, after oral argument held on May 7, 2015, and for the reasons set forth in the memorandum filed this date, it is hereby ordered that the motion filed by these defendants is denied in its entirety.