Gladys M. SUTHERLAND,

v.

MONONGAHELA VALLEY HOSPI-
TAL, Richard J. Alioto, M.D., Thomas
F. Brockmeyer, M.D., and B and B
Orthopedic Associates, P.C.,

Appeal of: Richard J. Alioto,
M.D., Appellant.

Gladys M. Sutherland,

v.

Monongahela Valley Hospital, Richard
J. Alioto, M.D., Thomas F. Brockmey-
er, M.D., and B and B Orthopedic As-
sociates, P.C.,

Appeal of: Thomas F. Brockmeyer,
M.D., and B and B Orthopedic
Associates, Appellants.

Superior Court of Pennsylvania.

Argued Feb. 25, 2004.
Filed June 28, 2004.

Kathleen Smith–Delach, Washington, for Alioto.

James T. Davis, Uniontown, for Sutherland.

Robert J. Grimm, Pittsburgh, for Monongahela Valley Hospital, Brockmeyer and B and B.

Before: DEL SOLE, P.J.,
MUSMANNO and ORIE MELVIN, JJ.

MUSMANNO, J.

¶ 1 The instant matter involves the consolidated appeals of Richard J. Alioto, M.D. ("Dr. Alioto") and B and B Orthopedic Associates, P.C. ("B and B") (collectively the "Appellants")[1] following a jury award for the plaintiff, Gladys Sutherland ("Sutherland"), in a medical malpractice action. We affirm.

¶ 2 On May 29, 1997, Sutherland underwent a surgical procedure known as a posterior tibial tendon reconstruction, performed by Dr. Alioto at Monongahela Valley Hospital (the "Hospital"). At the time, Dr. Alioto was affiliated with B and B. Following the surgical procedure, Dr. Alioto fitted Sutherland with a half-cast ("splint") on her left calf and ankle.

¶ 3 As the surgical anesthesia wore off, Sutherland began to complain of burning pain in her calf. In response to Sutherland's complaints, the hospital staff gave her Demerol and Morphine. Upon her discharge from the Hospital on May 30, 1997, Dr. Brockmeyer, who was also affiliated with B and B, examined Sutherland. Sutherland again complained of the burning pain in her calf to Dr. Brockmeyer. Dr. Brockmeyer observed that a piece of the casting material had overlapped the underlying padding. Dr. Brockmeyer explained to Sutherland that the splint was "rubbing" and attempted to bend it away from Sutherland's leg to provide some relief.

¶ 4 On June 2, 1997, Sutherland called Dr. Alioto at his office at B and B, complaining of the continuing burning sensation under her splint. Sutherland spoke to a member of the staff at B and B and asked that Dr. Alioto return her call as soon as possible. After receiving no response from Dr. Alioto, Sutherland then contacted her family physician, L. Douglas Pepper, M.D. ("Dr. Pepper"), at approximately 1:30 p.m. Dr. Pepper examined Sutherland at 5:30 p.m. that evening. After observing that a wound had developed under Sutherland's splint, Dr. Pepper immediately called Dr. Alioto's office. However, Dr. Alioto could not see Sutherland until June 4, 1997.

¶ 5 On June 4, 1997, a nurse from B and B removed Sutherland's splint. When Dr. Alioto examined Sutherland, he noted the presence of a full thickness skin necrosis approximately three inches in diameter located at the upper end of Sutherland's calf. Dr. Alioto immediately referred Sutherland to Martin Patrick Nee, Jr., M.D. ("Dr. Nee"), a plastic surgeon, for treatment of the wound. Dr. Nee examined Sutherland on June 6, 1997 and informed her that she would require a debridement of the area

---

1. The Notice of appeal filed by counsel for B and B and Thomas F. Brockmeyer, M.D. ("Dr. Brockmeyer") identified Dr. Brockmeyer as an appellant. We note that the jury did not find Dr. Brockmeyer to be negligent. Moreover, Dr. Brockmeyer has not participated further in this appeal.

and a skin graft on her calf, as the area was burned and infected. Dr. Nee performed the debridement on June 10, 1997, and the skin graft on June 20, 1997. As a result of this injury, Sutherland's leg is severely disfigured.

¶ 6 Sutherland instituted the instant medical malpractice action against Drs. Alioto and Brockmeyer, the Hospital, and B and B (collectively the "Defendants"). In support of her claim, Sutherland relied upon the expert testimony of Robert Nickodem, M.D. ("Dr. Nickodem"). Prior to trial, the Defendants moved to preclude Dr. Nickodem's testimony. However, the trial court denied the Motions. After the conclusion of the testimony, the trial court determined that it was not appropriate to place B and B on the verdict slip. However, the trial court stated that it would mold the verdict to include B and B if the jury found either doctor liable. The jury ultimately entered a verdict in favor of Sutherland and against Dr. Alioto in the amount of $150,000.00. The jury found that the Hospital and Dr. Brockmeyer were not negligent. The trial court then molded the verdict to include B and B, as jointly liable for the verdict, and to include delay damages.

¶ 7 Dr. Alioto filed a post-trial Motion on January 24, 2003. B and B filed a separate post-trial Motion on January 28, 2003. Following the expiration of 120 days, Sutherland praeciped for entry of judgment pursuant to Pennsylvania Rule of Civil Procedure 227.4. Judgment was entered on June 10, 2003, in Sutherland's favor. Dr. Alioto and B and B filed timely Notices of appeal.

¶ 8 On appeal, B and B raised the following issues:

1. Whether the trial court erred in allowing [Sutherland's] expert witness, Dr. Robert Nickodem, to testify as to negligence on the part of [Dr. Alioto], as well as to testify as to causation of [Sutherland's] injuries and/or [Sutherland's] increased risk of harm?

2. Whether [Sutherland] failed to offer expert testimony sufficient to establish that [Sutherland's] injuries were proximately caused by [Dr. Alioto's] negligence?

Brief for B and B at 4.

¶ 9 Dr. Alioto raised the following two issues:

1. Did the lower court err in failing to grant a judgment N.O.V. or, in the alternative, a new trial as a result of the failure of plaintiff's expert, Robert F. Nickodem, M.D.[,] to provide appropriate testimony either as to any causal link between the defendants' conduct and [Sutherland's] alleged harm or the nature of [Sutherland's] injury?

2. Did the lower court err in failing to grant a new trial based upon the court's failure to charge and let the jury consider the individual negligence of [B and B] as a result of the failure of its employees to pass messages regarding [Sutherland's] complaints to [Dr. Alioto]?

Brief for Dr. Alioto at 3.

¶ 10 Both B and B and Dr. Alioto assert that the trial court erred in permitting the testimony of Sutherland's expert, Robert F. Nickodem, M.D. ("Dr. Nickodem"). The Appellants allege two claims of error pertaining to the admission of Dr. Nickodem's testimony. First, B and B asserts that Dr. Nickodem's trial testimony exceeded the scope of his expert report. Next, both B and B and Dr. Alioto argue that the trial court erred in not granting a new trial on the basis that Dr. Nickodem's testimony failed to establish causation or the nature of Sutherland's harm. We will

first address the contention that the trial court erred in permitting Dr. Nickodem's testimony as it exceeded the scope of his expert report.

¶ 11 A trial court's rulings on evidentiary questions are controlled by the sound discretion of the trial court, and the appellate courts of this Commonwealth will not disturb those rulings unless a clear abuse of discretion is shown. *Hall v. Jackson,* 788 A.2d 390, 401 (Pa.Super.2001). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Paden v. Baker Concrete Constr.,* 540 Pa. 409, 658 A.2d 341, 343 (1995).

¶ 12 The Pennsylvania Rules of Civil Procedure require that an expert's testimony at trial be limited to the fair scope of his deposition testimony or pretrial report:

> To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, the direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto....

Pa.R.C.P. 4003.5(c) (emphasis supplied).

[I]n deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which would prevent the adversary from preparing a mean-

ingful response, or which would mislead the adversary as to the nature of the appropriate response.

*Bainhauer v. Lehigh Valley Hosp.,* 834 A.2d 1146, 1151 (Pa.Super.2003).

¶ 13 B and B argues that Dr. Nickodem's report failed to comment upon negligence and proximate cause. Consequently, B and B asserts that the trial court should have precluded Dr. Nickodem from testifying at trial. Upon review of the record, it cannot be said that any discrepancy between Dr. Nickodem's report and trial testimony was of such a nature that it would have prevented B and B from preparing a meaningful response or would have misled B and B as to the nature of the appropriate response. In fact, B and B does not assert that it was unable to prepare a meaningful response to Dr. Nickodem's report or that the report misled it as to the nature of an appropriate response.

¶ 14 Dr. Nickodem's testimony did not exceed the fair scope of his report. Dr. Nickodem's report could not have resulted in unfair surprise, as the report clearly indicated that Dr. Nickodem felt that Sutherland's injury, whether it is identified as a pressure sore or burn, resulted from the negligent application of the splint in that Dr. Alioto utilized an insufficient amount of padding. *See Brady v. Ballay, Thornton, Maloney Medical Assoc., Inc.,* 704 A.2d 1076, 1082 (Pa.Super.1997) (finding no reversible error in allowing an expert to testify beyond the fair scope of his report where the testimony did not prevent the plaintiffs from preparing a meaningful response or mislead them into preparing an inappropriate response). This report provided the Defendants with fair notice as to Sutherland's theories of negligence and causation. Consequently, B and B's contention that Dr. Nickodem's testi-

mony exceeded the scope of his expert report is without merit. Accordingly, we discern no abuse of discretion on the part of the trial court in permitting Dr. Nickodem's testimony.

¶ 15 The Appellants next argue that the trial court erred in failing to grant a new trial on the basis that Sutherland failed to prove causation, as well as the nature of her injury. Specifically, the Appellants assert that Dr. Nickodem was unable to testify within a reasonable degree of medical certainty that any alleged conduct on the part of Dr. Alioto caused Sutherland's injuries.

¶ 16 The refusal to grant a new trial will not be reversed on appeal absent an abuse of discretion or an error of law that controlled the outcome of the case. *Phillips v. Gerhart*, 801 A.2d 568, 571 (Pa.Super.2002). "To reverse the trial court, the Superior Court must consider all of the evidence in the light most favorable to the appellee and conclude that the verdict would be changed if another trial were granted." *Brady*, 704 A.2d at 1079. If there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed. *Id.*

¶ 17 A cause of action sounding in negligence for medical malpractice requires proof of four elements: (1) the medical practitioner owed a duty to the patient; (2) the practitioner breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were the direct result of the harm. *Mitzelfelt v. Kamrin*, 526 Pa. 54, 584 A.2d 888, 891 (1990).

Where the events and circumstances of a malpractice action are beyond the knowledge of the average layperson, the plaintiff must present expert testimony that the acts of the medical practitioner deviated from good and acceptable medical standards, and that such deviation was a substantial factor in causing the harm suffered.

*Montgomery v. South Philadelphia Medical Group, Inc.*, 441 Pa.Super. 146, 656 A.2d 1385, 1390 (1995).

¶ 18 The Pennsylvania Supreme Court outlined the following approach for determining whether the plaintiff established causation in a medical malpractice case:

[O]nce a plaintiff has demonstrated that defendant's acts or omissions ... have increased the risk of harm to another, such evidence furnishes the basis for the fact-finder to go further and find that such increased risk was in turn a substantial factor in bringing about the resultant harm; the necessary proximate cause will have been made out if the jury sees fit to find cause in fact.

*Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1288 (1978); *accord Mitzelfelt v. Kamrin*, 584 A.2d at 892. In order for the Plaintiff to place before the jury the question of whether that increased risk was a substantial factor in producing the plaintiff's injury, a plaintiff must only introduce evidence that a defendant's negligent act or omission increased the risk of harm and that the harm was in fact sustained. *See Hamil*, 392 A.2d at 1286.

¶ 19 The Appellants argue that Dr. Nickodem's testimony failed to establish the etiology and, consequently, the cause of Sutherland's injury. We disagree. Dr. Nickodem testified within a reasonable degree of medical certainty that Dr. Alioto did not meet the standard of care in applying the splint to Sutherland's leg. N.T., 1/14–17/03, at 40. While Dr. Nickodem stated that skin degradation was a risk associated with the application of a cast or splint, his expert report and trial testimo-

ny made it clear that a wound of the size suffered by Sutherland was not common, and that the improper application of the splint caused the injury. *See id.* at 59, 70, 71–72. Specifically, Dr. Nickodem opined that a skin break-down of the magnitude suffered by Sutherland would not occur if the splint were properly applied, *i.e.*, sufficient padding was used, the water utilized was the appropriate temperature, and an appropriate amount of time passed prior to placing the splint on an elevated surface. *Id.* at 40–41. The Appellants do not contest that Sutherland suffered a full thickness skin loss over her left calf. Upon review of the record in the light most favorable to Sutherland, it is clear that Sutherland demonstrated that Alioto's acts or omissions in applying her splint increased the risk of harm of skin degradation, and that Sutherland actually suffered that harm. *See Hamil,* 392 A.2d at 1288; *accord Mitzelfelt v. Kamrin,* 584 A.2d at 892. Whether Dr. Alioto's acts or omissions, which increased the risk of harm, were a substantial factor in bring about Sutherland's injury was a question for the jury to determine. Accordingly, we conclude that the record supports the denial of the Appellants' post-trial Motions.

¶ 20 The Appellants also argue that Sutherland failed to establish a *prima facie* case of negligence because Dr. Nickodem was unable to determine whether the full thickness skin loss suffered by Sutherland, under the splint applied by Dr. Alioto, was the result of a burn or a pressure sore. We must note that Dr. Nickodem stated that he was unable to determine the exact etiology of Sutherland's wound due to the fact that he did not have an opportunity to inspect the splint that Dr. Alioto applied to Sutherland's lower leg. N.T., 1/14–17/03, at 43. We note that it was Dr. Alioto's office that removed Sutherland's splint on June 4, 1997; immediately there-

after Dr. Alioto discovered the extent of Sutherland's injury. *Id.* at 76, 101–02. Dr. Alioto's office would have been in possession of Sutherland's splint when Dr. Alioto first observed the magnitude of Sutherland's wound. Given the fact that Dr. Nickodem was unable to examine the splint, as it was presumably discarded by Dr. Alioto's office, we find this argument unpersuasive. Moreover, Dr. Nickodem determined that the etiology of Sutherland's full thickness skin loss was either a pressure sore or a burn, either of which would result from the improper application of the splint. *Id.* at 40–42. Accordingly, this issue is without merit.

¶ 21 In the final issue raised in this consolidated appeal, Dr. Alioto argues that the trial court erred in failing to charge the jury and allow the jury to consider the individual negligence of B and B. In support of his argument, Dr. Alioto directs this Court to the case of *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991), for the proposition that B and B may be independently liable to Sutherland based upon a theory of corporate negligence. In *Thompson,* our Supreme Court held that a hospital owes the following duties to its patients: (a) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (b) a duty to select and retain only competent physicians; (c) a duty to oversee all persons who practice medicine within its walls as to patient care; and (d) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients. *Id.* at 707.

¶ 22 Dr. Alioto argues that the principles espoused in *Thompson* should be extended beyond hospitals to physician's offices. Brief for Dr. Alioto at 16. We note that the policy considerations underlying the Pennsylvania Supreme Court's creation of the theory of corporate liability for hospi-

tals are not present in the situation of a physician's office. In *Thompson*, the Supreme Court recognized that "[t]he corporate hospital of today has assumed the role of a comprehensive health center with responsibility for arranging and coordinating the total health care of its patients." *Id.* at 706. The same cannot be said for a physician's practice group. Accordingly, we decline Dr. Alioto's invitation to extend the negligence principles contemplated by *Thompson* to the case *sub judice.*

¶ 23 In the alternative, Dr. Alioto argues that this Court need not consider this issue in the context of corporate liability. Rather, Dr. Alioto asserts that the issue is simply that of vicarious liability. Brief for Dr. Alioto at 18. Dr. Alioto argues that vicarious liability is appropriate in cases, such as the one at hand, where the evidence establishes that an employee of a physician's office failed to inform the doctor of a patient's complaints. Pennsylvania law with regard to the vicarious liability of an employer for the acts of its employee was well summarized in *R.A. v. First Church of Christ,* 748 A.2d 692 (Pa.Super.2000), as follows:

> It is well settled that an employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment.

*Id.* at 699 (citations omitted).

¶ 24 We need not discuss the applicability of the theory of vicarious liability in this type of situation, as the evidence does not establish that the unidentified employee in the instant case was negligent in failing to relay Sutherland's complaints to Dr. Alioto. The record is completely devoid of any evidence necessary to establish that the actions taken by the unidentified employee were negligent. The evidence established only that Sutherland called, left a telephone message for Dr. Alioto, and that Dr. Alioto did not receive the message. Consequently, we find no error in the trial court's determination not to charge or let the jury consider the individual negligence of B and B.

¶ 25 Judgment affirmed.