J-S44020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DAVID LEAK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LATERESE COWELL, ADMINISTRATRIX OF THE ESTATE OF LYNDA COWELL AND LATERESE COWELL, ADMINISTRATRIX OF THE ESTATE OF NINTHA C. JOHNSON AND HARRIET WRIGHT, | |
| Appellees | No. 794 EDA 2016 |

Appeal from the Judgment Entered May 5, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 4319, March Term, 2014

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN:                    **FILED SEPTEMBER 29, 2017**

David Leak, Appellant, brought this fraudulent conveyance action pursuant to the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa.C.S. §§ 5101–5110, against Appellees, Harriet Wright and Laterese Cowell, administratrix of the estates of Lynda Cowell and Nintha C. Johnson,[1] seeking Appellee Wright's reconveyance of property of one of the

---

[1]  Nintha C. Johnson and Lynda Cowell were mother and daughter, respectively.  Laterese Cowell was Lynda Cowell's daughter and Nintha C. Johnson's granddaughter.  Laterese Cowell and Harriett Wright are cousins, as Nintha C. Johnson is Harriet Wright's aunt.  Complaint, 3/7/14, at ¶¶ 6, 7; N.T., 1/25/16, at 33; Findings of Fact and Conclusions of Law, 2/2/16, at ¶ 2.

estates so that Appellant could collect on a judgment. Following a two-day bench trial, the trial court determined that Appellant failed to carry his burden of proof and found against him in favor of Appellees. We affirm.[2]

The trial court filed the following Findings of Fact:

3. Nintha C. Johnson owned 1528 Point Breeze Avenue, Philadelphia, PA (the "Property") at the time of her death on January 6, 2007.

4. Before Nintha C. Johnson's death, Ms. Wright had spent significant time at the Property. She was close to her Aunt Nintha and described the Property as "the go-to house" in her family. Ms. Wright's Aunt Nintha lived on the top floor of the Property and operated a beauty salon on the first floor. Ms. Wright credibly testified that the Property had "tremendous emotional value" to her.

5. Nintha C. Johnson left a will, which was probated by her daughter, Lynda Cowell.

6. The will left the Property to Lynda Cowell, but steps were never taken during her life to convey the Property to her.

7. On June 12, 2007, Lynda Cowell was issued letters testamentary for the estate of Nintha C. Johnson, appointing her as the administratrix.

8. Lynda Cowell died on December 12, 2011.

9. Plaintiff David Leak was injured when he tripped and fell on the Property on June 21, 2011.

10. On February 15, 2012, the Court granted a rule to show cause why the Property should not be sold at sheriff's sale to satisfy back taxes in the amount of $6,291.97.

---

[2] Harriet Wright is the only Appellee who filed a brief in this appeal.

11. Ms. Wright learned of the impending sheriff's sale and contacted her cousin, Laterese Cowell, to offer assistance to stave off the sale of the Property.

12. While the Property also had sentimental value to Lynda Cowell's heirs, back taxes were owed and it was in poor condition. The heirs, including Laterese Cowell, believed the Property was more trouble than it was worth, and were happy to allow their cousin, Harriet T. Wright, to own the Property if she paid the back taxes and assumed any liens and judgments.

13. Lynda Cowell's heirs and Ms. Wright further agreed that they would wait until after January 2013 (more than one year after Lynda Cowell's death) to sign over the deed for the Property to Ms. Wright instead of probating Lynda Cowell's estate.

14. On August 22, 2012, before any notice of any potential claim by Mr. Leak had been served on any of the defendants in this matter, defendant Harriet T. Wright entered into an agreement with the heirs of Lynda Cowell to take over ownership and possession of the Property.

15. On the same day, Ms. Wright's daughter, Courtney A. Wright, signed for Laterese Cowell a Sheriff's Sale Payment Plan Agreement with the City of Philadelphia and the School District of Philadelphia to pay all back taxes on the Property.

16. At her mother's direction, Courtney A. Wright made payments to cover the delinquent taxes in the amount of $5,679.34.

17. A title report Ms. Wright obtained on August 2, 2012, showed that $6,087.40 was owed on the Property in city and school taxes, $6,580.93 was owed for water and sewer, and judgments in an aggregate amount of $35,276.91 had been lodged against the Property. The obligations against the Property totaled $47,945.24.

18. Ms. Wright understood that she would be taking ownership of the Property subject to all outstanding debts and liens.

19. In early 2013, Ms. Wright contacted Laterese Cowell and asked her to put the deed to the Property in her name. She received no response.

20. On May 10, 2013, counsel for plaintiff Leak filed petitions for citations to show cause on the heirs of the Estates of Lynda Cowell and Nintha C. Johnson why his lawyer should not be appointed administrator of these estates. The stated purpose of the petitions was so Mr. Leak could present a claim against the estates for his slip and fall.

21. A hearing on the petitions was scheduled for May 29, 2013.

22. Laterese Cowell was given notice of the petitions and hearing date.

23. When Ms. Wright learned of the petitions, she asked Laterese Cowell to go to the register of wills and sort out the situation.

24. On May 16, 2013, defendant Laterese Cowell was appointed administrator d.b.n.c.t.a. of Nintha C. Johnson's estate.

25. On May 17, 2013, defendant Laterese Cowell was appointed administratrix of Lynda Cowell's estate.

26. On June 12, 2013, plaintiff Leak filed a slip and fall action against Laterese Cowell as the administratrix of the estates of Lynda Cowell and Nintha C. Johnson.

27. The complaint was served upon Laterese Cowell on July 2, 2013.

28. On June 28, 2013, a deed conveying the Property from the estate of Nintha C. Johnson to defendant Harriet T. Wright for $5,743.71 was recorded in Philadelphia.

29. Also recorded was a Philadelphia Real Estate Transfer Tax Certification that stated the fair market value of the Property was at $16,742.00.

30. On February 14, 2014, a default judgment was entered in the slip and fall matter against Laterese Cowell, as administratrix of the estates of her mother and grandmother, for failure to file an answer within the required time. On February 28, 2014, a judgment in the amount of $15,000 was entered in favor of

David Leak and against Laterese Cowell, as administratrix of the estates of her mother and grandmother.

31. The matter now before the Court was initiated by complaint on March 27, 2014. Plaintiff Leak alleges that the transfer of the Property constitutes a fraudulent conveyance perpetrated to avoid Mr. Leak's slip and fall law suit.

32. Service was effectuated on defendant Harriet T. Wright on April 10, 2014, and on Laterese Cowell on April 17, 2014.

33. Ms. Wright responded to the complaint, denying all material allegations; Ms. Cowell failed to respond to the complaint.

34. A bench trial was held on January 25 and 26, 2016.

35. Plaintiff Leak presented the testimony of Robert Yizzi, a certified real estate appraiser, who testified that, as of January 7, 2015, the fair market value of the Property was $130,000.

36. Defendant Wright also presented expert appraisal testimony. Her expert, Henry Hoffman, testified that the fair market value of the Property as of June 27, 2013, was $50,000.

Findings of Fact and Conclusions of Law, 2/2/16, at 2–5.

The trial court concluded that Appellant was a creditor of the estates of Nintha Johnson and Lynda Cowell "by virtue of the $15,000 judgment entered on February 28, 2014, in his favor and against [Appellee] Laterese Cowell, as administratrix of the estates of her mother and grandmother." Findings of Fact and Conclusions of Law, 2/2/16, at 6. Citing Pa.R.C.P. 1029(b), and in light of Appellee Laterese Cowell's failure to file an answer to the complaint "notwithstanding her appearance at the trial and denial of all material allegations at that point," the trial court considered any facts stated in paragraphs 20–24 of the complaint to have been admitted as to

the estates of Nintha C. Johnson and Lynda Cowell. Findings of Fact and Conclusions of Law, 2/2/16, at 7. The trial court determined that the "deciding factor in this case is that significant steps already were taken to effectuate the transfer of the Property" from Appellee Nintha Johnson's estate to Appellee Wright "long before" Appellee Laterese Cowell or Appellee Wright "had any inkling that [Appellant] would present a claim against the estates." *Id*. at 9–10. The trial court concluded that the amount Appellee Wright paid plus the back taxes and judgments against the Property "far exceeds" its fair market value. *Id*. at 11. Thus, the trial court found for Appellees and against Appellant.

We summarize the procedural history as follows. Appellant filed a complaint on March 27, 2014, contending that the transfer of the Property to Appellee Wright was a fraudulent transfer and was done to avoid the "potential law suit" filed by Appellant. Complaint, 3/27/14, at ¶ 22. Appellee Wright filed an Answer and New Matter on April 29, 2014; Laterese Cowell never filed an answer. On February 27, 2015, Appellee Wright filed a motion for summary judgment, which the trial court denied on May 8, 2015. Appellant filed a motion *in limine* on November 3, 2015, requesting "an inference that the agreement of sale would be unfavorable to [Appellees'] legal position and would favor [Appellant's] claim." Motion, 11/3/15, at unnumbered 1. The trial court denied the motion on January 28, 2016.

On January 22, 2016, Appellee Wright filed two motions *in limine*; one sought to preclude the report and testimony of Appellant's expert, Robert Yizzi, and one sought to preclude Appellant "from introducing evidence and testimony of fraudulent intent" at trial. Motion *in Limine*, 1/22/16, at unnumbered 1. By orders dated January 25, 2016, and filed January 28, 2016, the trial court denied Appellee Wright's motion to preclude the report and testimony of Robert Yizzi and denied in part and granted in part Appellee Wright's motion to preclude testimony relating to her fraudulent intent. In this regard, the trial court stated that Appellant "is precluded from presenting testimony of alleged intent to defraud, delay, and hinder" but "is permitted to introduce exhibits to prove the alleged intent . . . to the extent they were produced in discovery." Order, 1/28/16. Also in that order, the trial court noted that Appellant was precluded from "attempting to establish the intent element of 12 Pa.C.S. § 5104(a)(1)" and "testimony is permitted to establish elements of § 5104(a)(2) but [it] will be disregarded by the court when evaluating the claim under § 5104(a)(1)." **Id**.

A bench trial ensued on January 25 and 26, 2016. At the close of Appellant's case, Appellees Wright and Laterese Cowell moved for a nonsuit on Appellant's claim pursuant to 12 Pa.C.S. § 5104(a)(2). N.T., 1/26/16, at 70, 90. The trial court granted the nonsuit based upon its conclusion that Appellant failed "to introduce any competent evidence that the Property was transferred without receiving a reasonably equivalent value, a necessary

element of the claim." Findings of Fact and Conclusions of Law, 2/2/16, at 6. The trial court ultimately held "that neither Laterese Cowell nor Harriet Wright intended to hinder, delay, or defraud" Appellant. *Id*. at 11.

Appellant filed a post-trial motion on February 11, 2016, seeking removal of the nonsuit and judgment in his favor, or in the alternative, a new trial. Post-Trial Motion, 2/11/16. The trial court denied the motion on February 23, 2016.[3] Appellant filed a notice of appeal on March 7, 2016, and a court-ordered Pa.R.A.P. 1925(b) statement on March 24, 2016. Procedurally, the appeal was premature, as judgment had not been entered on the verdict. *See Johnston the Florist v. TEDCO Construction Corp.*, 657 A.2d 511, 514 (Pa. Super. 1995) (an appeal lies from the entry of judgment and not an order denying a post-trial motion). Ultimately, judgment was entered on May 5, 2016.[4]

_____

[3] We note that "[a]n appeal does not lie from the entry of a judgment of compulsory nonsuit, but rather from a refusal to take it off [.]" *Biddle v. Johnsonbaugh*, 664 A.2d 159, 161 (Pa. Super. 1995). Pennsylvania Rule of Civil Procedure 227.1 mandates that post-trial motions, including a motion to remove a nonsuit, must be filed within ten days after "notice of nonsuit or the filing of the decision in the case of trial without a jury." Pa.R.C.P. 227.1(c)(2). Thus, the appeal properly lies from judgment entered on the order denying removal of the nonsuit. *See*, *e.g.*, *Harvey v. Rouse Chamberlin, Ltd.*, 901 A.2d 523, 524 n.1 (Pa. Super. 2006) (quoting *Billig v. Skvarta*, 853 A.2d 1028, 1030 n.1 (Pa. Super. 2004) ("[I]n a case where nonsuit was entered, the appeal properly lies from the judgment entered after denial of a motion to remove nonsuit.")).

[4] This Court has held that quashing a premature appeal is an unnecessary expenditure of judicial resources where the decision on appeal is otherwise
*(Footnote Continued Next Page)*

Appellant raises the following issues on appeal:

1. In granting the Nonsuit, did the trial court commit an abuse of discretion/error of law in failing to consider [Appellees'] Expert's appraisal as evidence in determining whether the Property was sold "without receiving a reasonably equivalent value"?

2. In granting the Nonsuit, did the trial court commit an abuse of discretion/error of law by sustaining three objections to "Mr. Yizzi's attempt at trial to extrapolate that value ($130,000) back to 2013?"

Appellant's Brief at 2–3 (parentheses substituted for brackets).

We address the issues together. A trial court may enter a nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. Pa.R.C.P. 230.1(a), (c); *Commonwealth v. Janssen Pharmaceutica, Inc.*, 8 A.3d 267, 269 n.2 (Pa. 2010). Nonsuit is proper where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action. *Gillard v. Martin*, 13 A.3d 482, 486–487 (Pa. Super. 2010). "On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with appellant receiving 'the benefit of every reasonable

*(Footnote Continued)* ⸻

final and the only barrier to appellate review is the entry of judgment. *Johnston the Florist*, 657 A.2d at 514. "[W]here . . . judgment is subsequently entered, the appeal is 'treated as filed after such entry and on the date thereof.' Pa.R.A.P. 905(a)." *K.H. v. J.R.*, 826 A.2d 863, 872 (Pa. 2003).

inference and resolving all evidentiary conflicts in appellant's favor.'"
**Scampone v. Highland Park Care Ctr., LLC**, 57 A.3d 582, 595–596 (Pa. 2012) (quoting **Agnew v. Dupler**, 717 A.2d 519, 523 (Pa. 1998)). An order denying a motion to remove a nonsuit will be reversed on appeal only if the trial court abused its discretion or committed an error of law. **Weiner v. Fisher**, 871 A.2d 1283, 1285 (Pa. Super. 2005); **Kovalev v. Sowell**, 839 A.2d 359, 368 (Pa. Super. 2003).

Both of Appellant's issues assail the propriety of the trial court's grant of a nonsuit related to § 5104(a)(2) of PUFTA. That provision provides as follows:

§ 5104. Transfers fraudulent as to present and future creditors

**(a) General rule**.--A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa.C.S. § 5104(a).

In its Pa.R.A.P. 1925(a) opinion, the trial court explained that the Estate of Lynda Cowell conveyed the Property to Appellee Wright for $5,743.71 plus her agreement to pay all outstanding debts and liens against it in the amount of $47,945.24. Supplemental Trial Court Opinion, 2/16/17, at 2. The trial court observed that Appellant's only evidence offered in support of his claim that the transfer of the Property was not a reasonably equivalent value was the expert opinion of Robert Yizzi, a certified real estate appraiser. The trial court determined, however, that it was fatal to Appellant's case that Mr. Yizzi valued the property as of 2015, not 2013 when the transaction occurred. *Id*.

Appellant challenges the trial court's determination that he failed to produce competent evidence at trial that the estate did not receive reasonably equivalent value for the Property when it was transferred, a "necessary element of the claim." Findings of Fact and Conclusions of Law, 2/2/16, at 6; Appellant's Brief at 14.[5] Encompassed in that issue, Appellant maintains that the trial court erroneously concluded that the testimony of Appellant's expert witness, Robert Yizzi, was not credible because it

---

[5] Rather than provide pinpoint citation to a particular document, both Appellant and to a lesser extent, Appellees, merely cite to the appendix to Appellant's brief in violation of Pa.R.A.P. 2119(c) and 2133, thereby requiring this Court to scour the appendix, the trial court opinion, and other documents in search of referenced support.

addressed the value of the Property as of January 7, 2015, not the relevant period at the time of the transfer in 2013. N.T., 1/26/16, at 95. Moreover, Appellant asserts the trial court erroneously found that Robert Yizzi's testimony was the only evidence Appellant presented in support of his § 5104(a)(2) claim. Appellant's Brief at 15. In this regard, Appellant points out that he also relied on the opinion of Appellees' expert, Henry Hoffman, that the Property was worth $50,000 in June of 2013. **See** Findings of Fact and Conclusions of Law, 2/2/16, at 5. Although Appellant disagreed with that valuation, Appellant contends that he relied upon Mr. Hoffman's appraisal to support his contention that the $5,743.71 that Appellee Wright paid for the property was substantially below even the $50,000 appraisal of Appellees' own expert, Henry Hoffman. Appellant's Brief at 15. Appellant avers that the trial court's refusal to consider Mr. Hoffman's testimony as evidence constituted an abuse of discretion. **Id**.

Finally, Appellant contends the trial court committed an abuse of discretion or error of law in sustaining three objections to Mr. Yizzi's attempt at trial to extrapolate his 2015 $130,000 value of the Property back to the time of the Property's transfer in 2013. N.T., 1/25/16, at 123; N.T., 1/26/16, at 81. It clearly provided that the Property's valuation of $130,000 was as of January 7, 2015, and the estimate of value stated in the appraisal applied only to the effective date as stated in the report. Report, 1/27/15, at 1, 22. At trial, Mr. Yizzi explained that he utilized a Board of Revision of

Taxes ("BRT") Report, a public record that the City of Philadelphia utilizes in valuing property to determine assessment values, and the sale of comparable properties in formulating his appraisal of the Property's market value in January of 2015. When Appellees objected to Appellant's solicitation of Mr. Yizzi's opinion of the Property's valuation in 2013 because Appellant asked for an opinion outside of the witness's report, the trial court sustained the objections. N.T., 1/25/16, at 135–136.

Appellee Wright responds that in deciding whether an expert's trial testimony is within the fair scope of his report, "the accent is on the word `fair.'" Appellee's Brief at 9. Appellee Wright relies upon **Sutherland v. Monongahela Valley Hosp.**, 856 A.2d 55, 59 (Pa. Super. 2004), where this Court stated:

> The question to be answered is whether, under the circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Id*. Appellee maintains that any attempt by Mr. Yizzi at trial to extrapolate "an entirely new opinion" valuing the Property as of 2013, when he never provided such opinion in his expert report, was precluded by Pa.R.C.P. 4003.5. Appellee's Brief at 12.

Appellant's argument that the trial court was required to consider Appellant's reliance on Appellees' expert report by Henry Hoffman as well is premised on Pa.R.C.P. 230.1(a)(2), which provides:

- 13 -

Rule 230.1. Compulsory Nonsuit at Trial

(a)(1) In an action involving only one plaintiff and one defendant, the court, on oral motion of the defendant, may enter a nonsuit on any and all causes of action if, at the close of the plaintiff's case on liability, the plaintiff has failed to establish a right to relief.

(2) The court in deciding the motion shall consider only evidence which was introduced by the plaintiff and any evidence favorable to the plaintiff introduced by the defendant prior to the close of the plaintiff's case.

\* \* \*

(c) In an action involving more than one defendant, the court may not enter a nonsuit of any plaintiff prior to the close of the case of all plaintiffs against all defendants.

Pa.R.C.P. 230.1(a) and (c). We observe that Appellant failed to make this specific claim in his post-trial motion or Pa.R.A.P. 1925(b) statement. *See* Pa.R.A.P. 302(a) (noting that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this [Rule] are waived"). Moreover, examining the provisions of Rule 230.1(a)(2), we note that Mr. Hoffman's testimony was not necessarily "favorable" to Appellant. Indeed, in its conclusions of law, the trial court determined that Mr. Hoffman's appraisal of $50,000 as of June 2013 was approximately the same amount of debt that Appellee Wright assumed when she took ownership of the Property. Findings of Fact and Conclusions of Law, 2/2/16, at 10.

In challenging the trial court's ruling proscribing Appellant's efforts to have Mr. Yizzi extrapolate the value of the Property to 2013, when his report failed to do so, Appellant confuses and mistakenly relies on case law in support of the use of comparable property values in determining the Property's valuation. Appellant's Brief at 19–20. The trial court's rulings sustaining Appellee's objections had nothing to do with the expert's proper use of comparable property values in reaching his appraisal value.[6] Rather, the trial court concluded that the opinion Appellant attempted to solicit violated Pa.R.C.P. 4003.5(c) because Mr. Yizzi's testimony was not within the fair scope of his report. Supplemental Trial Court Opinion, 2/16/17, at 2. Rule 4003.5(c) provides, "[T]he direct testimony of an expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony...set forth in the deposition, answer to the interrogator, separate report or supplement thereto." Pa.R.C.P. 4003.5(c); Supplemental Trial Court Opinion, 2/16/17, at 2.

There is no "hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his or her pretrial report.

---

[6] We also note that the comparable values utilized in the Report discussed only properties that were sold after the Property was transferred to Appellee Wright, before January 7, 2015, whereas our Supreme Court has observed that "comparable properties" are those that "have been recently sold." *McKnight Shopping Center v. Board of Property Assessment, Appeals & Review*, 209 A.2d 389, 393 (Pa. 1965). Thus, using this definition, comparable properties should have included those "recently sold" before the instant transfer in 2013.

Rather, the determination must be made with reference to the particular facts and circumstances of each case." ***Wilkes-Bane Iron & Wire Works, Inc. v. Pargas of Wilkes-Barre, Inc.***, 502 A.2d 210, 212 (Pa. Super. 1985). Nevertheless, "[t]he controlling principle which must guide us is whether the purpose of Rule 4003.5 is being served." ***Id***. The limitations on the scope of the expert's testimony "serves to insure that an expert's report will be sufficiently comprehensive and detailed to inform an opposing party of the expert's testimony at trial." ***Jones v. Constantino***, 631 A.2d 1289, 1295 (Pa. Super. 1993) (citing ***Havasy v. Resnick***, 609 A.2d 1326, 1331 (Pa. Super. 1992)).

In light of these principles, it is clear that the trial court correctly concluded that the proffered testimony was outside the fair scope of Mr. Yizzi's report. That report estimated the Property's value as of January 7, 2015, not as of the date of transfer. Further, the report provided that the estimate of value stated in the appraisal **applied only to the effective date as stated in the report**. Report, 1/27/15, at 22. The report did not render any opinion regarding the value of the Property in 2013. Thus, it would constitute prejudice and unfair surprise to Appellees to permit Mr. Yizzi to render an entirely new appraisal.

We agree with the trial court that Appellant failed to prove under 12 Pa.C.S. § 5104(a)(2) that the Property was transferred without receiving reasonably equivalent value and properly granted Appellees' motion for

nonsuit. Appellant's sole evidence offered by Mr. Yizzi did not address the value of the Property in 2013, when the Property transfer occurred, and Appellant's attempt to extrapolate the 2015 value to 2013 was properly denied. Mr. Hoffman's testimony was not necessarily favorable to Appellant, and in any event, that particular argument was not properly presented and preserved to the trial court. Finally, Appellant's attempt to offer testimony about a BRT Report was not permitted because the report was not entered into evidence. N.T., 1/25/16, at 127; Supplemental Trial Court Opinion, 2/16/17, at 3.

Judgment affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date:* *9/29/2017*